## No. 9216.

### SUCCESSION OF KATE TOWNSEND.

The proceeding by *rule* to know whether an executor has funds, to call for a true statement of his accounts and his bank book, and to mulct him with interest on any sum for which he may be responsible and does not faithfully account, as also to dismiss him from office, is expressly authorized by Section 8, or 1464, of the R. S., and Article 1151 of the R. C. C., which are all couched in the same terms.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*A. J. Murphy* for Troisville Sykes, Appellant.

*J. Ad. Rozier*, Attorney of Absent Heirs.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The appellant complains of a judgment which condemned him to pay twenty per cent interest on an amount of money which he is alleged to have illegally withdrawn from bank, and which dismisses him as executor of the deceased.

His defense is, that the proceeding by *rule* to mulct and remove him is unauthorized by law; that he is the universal legatee of the deceased; that as such, he has accepted her succession and has gone into possession of its assets; that thereby the succession was closed and its admin-

istration terminated, and that the courts have no further jurisdiction over the matter.

The proceeding was by *rule* by the attorney appointed to represent the absent heirs of the deceased. Its practical object was to know whether the executor had any funds in hand. It expressly requires him to deposit in court the bank book which the law directs to be kept of all succession moneys, and to file a true statement of his accounts.

The summary proceeding is expressly authorized by Sec. 8 or 1464 of the R. S., or Article 1151 of the R. C., which are reproductions of the Act of 1855, No. 90, p. 78.

The law reads:

"Any creditor, or other person interested, may, at the regular sittings of the courts in New Orleans and in the county, as well during the vacation as the sitting of the court having jurisdiction, file in the clerk's office a *motion* to know whether any executor, administrator, curator or syndic has any funds, and he shall be bound within ten days to file a true statement of his accounts, and his bank book if he has one, showing the amount of funds collected by him; and on failure to do so, shall be dismissed from office and pay ten per centum per annum interest on any sum for which he may be responsible."

In 1837, Act 102, p. 92, was passed relative to voluntary surrenders and to the settlement of successions. By the third section of that act, any creditor or person interested could, *on motion*, require production in court of the bank book which the law declares shall be kept by syndics and succession representatives; and in a proper case the court, while passing on such motion, could not only inflict twenty per cent interest *per annum* as a penalty on the delinquent official, but also remove him from his trust.

But, in 1855, by Act 90, p. 72, this section was recast and condensed, so as to eliminate the proceeding by *rule*.

In 1856, Succession of Pasquier, 11 Ann. 279, the proceeding by rule was not objected to, and the rule was treated by the parties "as a separate and distinct claim."

The judgment was affirmed.

In 1870, however, Succession of Williams, 22 Ann. 94, it was held that the Act of 1837 had been repealed by the Act of 1855, and that the proceeding by rule was no longer authorized under that act, as formulated in Section 1463 of the R. S.

The ruling in 28 Ann. 323, is no shield to the appellant. The rule was merely for an account. It was not, until after the administrator had filed a *tableau* of debts, that another rule was taken for his dis-

missal. The exception to the form of the proceeding was sustained on appeal, the Court holding that it was irregular and in violation of Arts. 1017 and 1018 of the C. P. No reference is made, either in the opinion or in the briefs in the case, to the Act of 1855, as embodied in Section 1464 of the R. S. It therefore did not receive the consideration to which it was well entitled.

Apart from finding a different condition of things, however slight, in that case, we are far from yielding that the provisions of the C. P. must control, under the circumstances mentioned in sec. 1464, which creates exceptions and provides for a specific summary remedy. If the opinion and decree in 28 Ann. so mean, they are entitled to no weight as authority and are overruled.

It is difficult to perceive why the proceeding by rule was not retained in the legislation of 1855, when it was preserved for germane objects by the same legislation in the section following.

Confronted with the fact that the words *"on motion"* were left out, and that a previous Court has held that the summary proceeding was unauthorized and that the practice to some extent has been guided accordingly, we do not feel authorized now to determine differently.

It cannot be insisted that the rule in this matter was taken only under Sec. 7, or 1463, R. S., or Art. 1150 R. C. C., because it calls for twenty per cent instead of ten, allowed by the subsequent provision of law. It may well be taken under either, or both.

The rule was taken by one in interest—the attorney of absent heirs, appointed by the Court and under the instructions of the judge.

On the trial, the Court ascertained that the statement of accounts and bank book called for from the executor, and which under the law he should have kept in a proper manner, were not those which he filed and submitted.

The statement which the law demands is a *true* statement; that means, a *faithful* and *accurate* account. The bank book which should be kept is that showing a deposit of all funds received and an authorized withdrawal, if any, of part or of the whole of the same.

The bank book filed shows a deposit of $3049, and a withdrawal of the whole of that amount less ten dollars, without any legal authority, except to the extent of some $300; while the statement shows a receipt by the executor of an additional sum of $4538 05, which does not appear to have been deposited.

The statement and the bank book submitted are clearly not such as the law expected the executor to produce. This dereliction of duty is the *failure* mentioned in the law.

While the Act of 1837 was in force, that is in 1852, the then Supreme Court was of opinion that the summary proceeding by motion was authorized and could be resorted to for the destitution of a succession representative in default. It went so far as to say that for failure to keep the money of the estate in bank, the Court might dismiss him *ex officio* for that cause. Peale vs. White, 7 Ann. p. 450, 3d par.

Of course, since the recasting and repealing of Sec. 3 of the Act of 1837, a succession representative, under Sec. 7, or 1463, R. S., could not be destituted by rule; but it does not follow that on a proceeding in that form, which is formally authorized by Sec. 8, or 1464, R. S., the succession representative cannot be removed for failure to file a *true* statement of his accounts and his properly kept bank book.

We are therefore of opinion, like the district judge, that the executor is a delinquent and that the summary proceeding against him is sanctioned by law.

As to his defense that he is the universal legatee of the deceased; that he has taken possession as such of the assets of the succession, which was thereby so effectually closed that the court ceased to have any further jurisdiction over the matter, it suffices to say that it is untenable.

An executor who has qualified and who is at the same time universal legatee, cannot, by any act purely his own, cease to be executor and represent himself as the sole heir. He cannot be permitted to deny his capacity as executor by setting up that he has accepted unconditionally as universal legatee and holds the estate, not as executor, but as owner. Succession of Frazier, 35 Ann. 381; 33 Ann. 595; 5 Ann. 644.

It is therefore ordered and decreed that the judgment appealed from be amended so as to strike out therefrom the word "*twenty*," and substitute thereto the word "*ten*" as the rate of interest allowed; and that thus amended it be affirmed, at the cost of the succession, on appeal.

Rehearing refused.

----

An application for letters of dative testamentary executorship, opposed by one who claims to be executor, can be entertained and granted *ex parte*, where, before the appointment is made, the opponent is removed as such executor. The opposition falls with the removal.

Judgments dismissing succession representatives from office take effect upon being signed and cannot be *suspended* by appeal. They are to be executed provisionally.

*Lis pendens* is a matter of plea. Where it was not pleaded in the lower court, it cannot be raised on appeal.

By no fault of ours it was that we did not pass upon the second appeal taken from the second judgment herein rendered. We propose now to do so.

The appellant complains that the judgment appointing the public administrator as dative executor is erroneous, on the ground that it was rendered *ex parte*.

It appears that the public administrator applied for the dative executorship; that his application was advertised and opposed by Sykes, on numerous grounds, in his capacity of executor.

At the expiration of the delay allowed for opposing the application, the public administrator produced proof of the required publication and prayed to be appointed.

In the meantime, in the other proceeding, contradictorily conducted, Sykes had been removed as executor.

The court took action on the petition of the public administrator, convinced that the opposition of Sykes to the appointment had fallen with his removal, and rendered judgment appointing the public administrator dative executor.

The appellant urges that, after the rule had been taken, a suit was brought to remove him, which is still pending and undecided before the *same* court.

The rule was taken on January 31, 1884, and the suit was brought on February 9. The defendant in rule excepted on the 18th of February, but did not plead *lis pendens*.

How can he do so *here?* The defense is a matter of plea, not one that can be raised in a *brief*.

Even then, how could *lis pendens* be pleaded in the *first* proceeding? How could it be set up as against a proceeding in the *same* court? It rests on a proceeding previously instituted in a *different* court of concurrent jurisdiction. Even then, the law provides that when the plea is not made the judgment first rendered is valid and executory against the party cast, and the proceedings in the other case shall be stayed and the suit dismissed. C. P. 94, 335.

The judgment removing Sykes as executor became final the moment it was signed. It belongs to that class of judgments from which no suspensive appeal lies, and which are executory at once. C. P. 580, 1059; R. C. C. 1160. There was, therefore, no necessity for the fixing of the application of the public administrator and for the hearing of Sykes, who had ceased to have any capacity to stand in judgment on

his opposition.   The court was right in considering that the opposition was as though it had never been filed, and in appointing the public administrator to the dative testamentary executorship.

This is a case entirely *sui generis*.

It is therefore ordered and decreed that the judgment appealed from be affirmed. with costs.

Rehearing refused.